**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

FILED

2022 OCT 21  AM 11: 29

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| AARON SEMAJ SMITH, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | **EP-22-CV-364-DCG** |
| | § | |
| FEDERAL BUEAU OF PRISONS, | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Aaron Semaj Smith, Federal Prisoner Number 22253-032, petitions the Court under 28

U.S.C. § 2241 to intervene in his behalf and order the Bureau of Prisons (BOP) to release him from

prison. Pet'r's Pet., ECF No. 1. His petition is denied because it appears from its face that his

claims are unexhausted and, in the alternative, he is not entitled to § 2241 relief.

### BACKGROUND

Smith is a 49-year-old inmate serving a 90-month sentence for a drug trafficking offense.

*Id.* at 2. He is currently confined at the La Tuna Federal Correctional Institution in Anthony, Texas.

*See* www.bop.gov/inmateloc (search for Reg. 22253-032, last visited Oct. 18, 2022). His projected

release date is January 19, 2025. *Id.*

On July 11, 2018, Kentucky State Police officers stopped Smith for traffic violations while

he was traveling on Interstate 75 in Grant County, Kentucky. *See United States v. Smith*, 2:18-CR-

46-DLB-CJS-1 (E.D. Ky.), Plea Agreement, ECF No. 47 at 2. They brought a canine to the scene

and obtained a positive drug alert on Smith's silver Toyota 4Runner. *Id.* They searched Smith's

vehicle and found 308 grams of heroin in a large, shrink-wrapped package hidden behind the

dashboard. *Id.* After they advised Smith of his *Miranda* rights, they obtained his admissions that

the substance located in his vehicle was heroin, and that he was in the process of delivering it to

someone in Lexington, Kentucky. *Id.*

At the time of the arrest, Smith had prior state-court convictions in Kentucky for trafficking heroin and codeine in case 09-CR-58 in the Jefferson Circuit Court, and trafficking in heroin, second or greater offense, in case 10-CR-821-001 in the Jefferson Circuit Court. *Id.*

Smith pleaded guilty pursuant to a plea agreement to possession with intent to distribute more than 100 grams of heroin in the United States District Court for the Eastern District of Kentucky. *Id.*, J. Crim. Case, ECF No. 63. He was sentenced to 90 months' imprisonment. *Id.* He subsequently filed a motion for compassionate release based on the threat posed to him by the COVID-19 pandemic. *Id.*, Def.'s Mot., ECF No. 72. His motion was denied because he failed to exhaust his administrative remedies before he filed his motion. *Id.*, Order, ECF No. 76.

Smith reports the BOP took him into its custody on November 27, 2019. Pet'r's Pet., ECF No. 1 at 2. He avers he has always maintained a low or minimum Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) score. *Id.* He claims he "has successfully completed his 13 needs and assessment [evaluations and] has been on the waiting list for numerous [other] programs since 2-10-2020." *Id.* He adds "an inmate is considered programming if he . . . is on the waiting list for a program." *Id.*

Smith now asserts he "is entitled to immediate release because he has completed [his] statutory sentence." Pet'r's Pet., ECF No. 1 at 3. He reasons under 18 U.S.C. § 3624(b), he is only "required to serve 85% of the imposed sentence"—thereby reducing his 90-month sentence by 14 months to 76-months' imprisonment. *Id.* at 3. He adds under § 3624(c), he must serve 12 months in a halfway house followed by six months in home confinement—thereby reducing his remaining 76-month sentence by 18 months to 62 months' imprisonment. *Id.* He then claims under § 3624(g),

he is entitled to an additional 12-month reduction based on his accumulated "First Step Act time credit" because he successfully completed his assigned productive activities—thereby reducing his remaining 62-month sentence to 50 months' imprisonment. *Id.* So, he argues he has already served the full 50-month term of imprisonment required to complete his sentence and is, therefore, eligible for immediate release. *Id.*

The Court observes Smith has failed to include the $5.00 filing fee or an application to proceed *in form pauperis* with his petition. But it waives the fee in the interest of expediting the processing of his claim.

## APPLICABLE LAW

A petition for a writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle for a prisoner to attack "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000). It will not be granted, however, unless the petitioner shows he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

When a court receives a § 2241 petition, it accepts a petitioner's allegations as true during the initial screening. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by a *pro se* petitioner under more a lenient standard than it applies to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But it must still find "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556. Upon completing the initial screening, it must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner

is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)), 28 U.S.C. foll. § 2254.

## ANALYSIS

### A. Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether a petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam). A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review. *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993). Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures. *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

A federal prisoner may use the BOP's multi-tiered administrative remedy program "to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). He may pursue relief in a federal court only after he has exhausted all levels of the administrative review process. *Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977).

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller*, 11 F.3d at 62 (internal citations omitted). Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review. *Id.*

Smith "argues that pursuing the administrative remedies would be futile in light that his

sentence has already expired." Pet'r's Pet., ECF No. 1 at 1. And he contends he "may suffer irreparable harm if [he is] unable to secure immediate judicial consideration of his claim." *Id.* at 2. Hence, he concedes he has not exhausted.

If Smith has a meritorious claim, there is nothing to suggest that the BOP would not afford him relief through its administrative review process. And if the BOP made an error concerning the calculation of Smith's sentence and projected release date, the BOP should have the opportunity to correct the error before he is permitted to seek judicial intervention. Indeed, an attempt by Smith to exhaust through the BOP administrative review process would clearly *not* be a patently futile course of action. And while "[i]t is true that exhaustion . . . takes time, . . . there is no reason to assume that . . . prison administrators . . . will not act expeditiously." *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973).

Furthermore, Smith's prior motion for a compassionate release was dismissed because he failed to exhaust his administrative remedies. So, he was familiar with the concept of administrative exhaustion. And he knew the BOP's administrative review process was available to address his claim because he initiated it through his requests to the staff. Pet'r's Pet., ECF No. 1 at 15, 16. He also understood that under 18 U.S.C. § 2624(c), the BOP had the discretion to place him in a residential reentry center for up to twelve months and on home confinement for up to six months. *Id.* at 3. Yet, Smith delayed filing his petition until October 12, 2022—or after he believed he had already completed his term of imprisonment. *Id.* at 1. Given Smith's "lack of diligence in pursuing this claim, he has not shown the 'extraordinary circumstances' warranting an exception to the exhaustion requirement." *Castano v. Everhart*, 235 F. App'x 206, 208 (5th Cir. 2007).

Consequently, the Court finds that Smith has failed to exhaust his administrative remedies.

And it notes that dismissal on this basis alone is warranted. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies). But even if Smith had properly exhausted, the Court would still not grant him § 2241 relief.

### B.  Authority of the Bureau of Prisons to Place Inmates

Smith claims that 18 U.S.C. § 3624(c) entitles him to serve 12 months in a halfway house followed by six months in home confinement. He is wrong.

The Court notes two statutes govern the discretion of the BOP to place an inmate: 18 U.S.C. § 3621 and 18 U.S.C. § 3624.

Section 3621(b) grants the BOP the discretion to designate a prisoner's place of confinement. Under § 3621(b), the BOP:

> may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable.

18 U.S.C. § 3621(b). In making this determination, the BOP must consider "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . and (5) any pertinent policy statement issued by the Sentencing Commission[.]" *Id.*

Section 3624(c) grants the BOP Director the discretion to place a prisoner in a community corrections facility for up to twelve months. 18 U.S.C. § 3624(c); *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring). It also gives the Director the discretion "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of

that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). It further directs the Director to grant "risk and needs assessment system participants" up to 15 days credit for every 30 days of successful participation in certain evidence-based recidivism reduction (EBRR) programs and productive activities (PA). 18 U.S.C. § 3624(g). It requires the Director to issue new regulations to ensure that placements in community corrections facilities are "(A) conducted in a manner consistent with section 3621(b) of this title; (B) determined on an individual basis; and (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* § 3624(c)(6).

The BOP adopted regulations implementing § 3624(c), which were codified at 28 C.F.R. §§ 570.20–.22. Both the statute and the regulations instruct the BOP to determine the amount of time a prisoner should spend in residential reentry center "on an individual basis." *Id.*; 28 C.F.R. § 570.22.

The Supreme Court has consistently held that a prisoner has no constitutional right to be confined in any particular place. *See McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Sandin v. Conner*, 515 U.S. 472, 478 (1995) ("the Due Process Clause did not itself create a liberty interest in prisoners to be free from intrastate prison transfers."); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.").

The Attorney General—and by delegation the BOP—has exclusive authority and discretion to designate the place of an inmate's confinement while he is serving a court-imposed sentence. *Moore v. United States Att'y Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973); *Ledesma v. United States*, 445 F.2d 1323, 1324 (5th Cir. 1971). "[A]ny approach that puts the judicial branch

in charge of designating the place of confinement for a federal prisoner—no matter how well justified on utilitarian grounds—collides with 18 U.S.C. § 4082(b), which gives the Attorney General unfettered discretion to decide where to house federal prisoners." *In re Gee*, 815 F.2d 41, 42 (7th Cir. 1987).[1]

Furthermore, a petitioner complaining about a BOP assignment is not entitled to judicial relief for an alleged "violation of his Fifth Amendment right to due process because 'the failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest.' " *Assaad v. Ashcroft*, 378 F.3d 471, 475 (5th Cir. 2004) (quoting *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981))); *cf. Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("[A] statute which 'provides no more than a mere hope that the benefit will be obtained . . . is not protected by due process.' ") (alteration in original) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)).

Thus, after reviewing Smith's petition and the applicable statutes, the Court finds the BOP has the exclusive authority and discretion to determine if and when to assign Smith to a prison, a community correction facility, or home confinement. As a result, the Court also finds Smith is not—as he claims—"entitled" to serve 12 months in a halfway house followed by six months in home confinement.

### C. Authority of the Bureau of Prisons to Grant Time Credits

Smith claims that 18 U.S.C. § 3624(b) entitles him to a 15 percent reduction in his sentence for his good conduct—thereby reducing his sentence by an additional 14 months. Pet'r's Pet., ECF

---

[1] The statutory language in 18 U.S.C. § 4082(b) was re-codified through Pub. L. 94-473, Title 2 II, § 212(a)(2), Oct. 12, 1984, and is currently found at 18 U.S.C. § 3621(b).

8

No. 1 at 3. He also claims that § 3624(g) entitles him to an additional reduction of 15 days per month for his low PATTERN score and participation in assigned productive activities—thereby reducing his sentence by an additional 12 months. *Id.*

"[A] prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations." 18 U.S.C. § 3624(b). A prisoner has the opportunity to earn ten additional days of time credits for every 30 days of successful participation in EBRR programs and PA. *Id.* § 3632(d)(4)(A)(i). A prisoner at a minimum or low risk of recidivating may earn an additional five days of time credits if he does not increase his risk level over two consecutive assessments. *Id.* § 3632(d)(4)(A)(ii). But earned time credits are "applied toward time in prerelease custody or supervised release." *Id.* § 3632(d)(4)(C). And the Director may transfer a prisoner into prerelease custody or supervised release only in accordance with § 3624(c). *Id.* So, under the statutory scheme established in § 3624 and § 3632, the Director retains the discretion to determine whether a prisoner will (1) receive time credits toward the completion of his sentence, and (2) be placed in a community corrections facility or home confinement.

Smith provides evidence his PATTERN score is "minimum." Pet'r's Pet., ECF No. 1 at 10. He claims he "has successfully completed his 13 needs and assessment." *Id.* at 2. But he fails to provide evidence of the amount of time he successfully participated in a PA. And he includes a document which shows his time credits—including any First Step Act time credits for his actual participation in PA—have already been calculated in accordance with BOP policy. *Id.* at 15. In

9

any event, the calculation of his time credits and his assignment to a community corrections facility or home confinement remains within the discretion of the Director. Consequently, he cannot meet his burden of showing he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c).

## CONCLUSIONS AND ORDERS

Accordingly, the Court concludes that Smith has not only failed to exhaust his administrative remedies but also has no constitutional or statutory right to immediate release from prison. The Court further concludes, therefore, that it appears from the face of Smith's petition and other pleadings that he is not entitled to § 2241 relief. The Court consequently enters the following orders:

**IT IS ORDERED** that the $5.00 filing fee is **WAIVED**.

**IT IS FURTHER ORDERED** that Smith's petition for writ of habeas corpus under 28 U.S.C. § 2241 (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust.

**IT IS ALSO ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**SO ORDERED**.

SIGNED this _____20ᵗʰ_____ day of October 2022.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE